UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BMO BANK N.A.,

Plaintiff,

v. Case No. 8:26-cv-00510-TPB-SPF

SCOTT DONALDSON,

Defendant.
______________________________________/

**REPORT AND RECOMMENDATION**

This case comes before the Court on Plaintiff BMO Bank N.A.'s Motion for Default Judgement ("Motion") (Doc. 14). Pursuant to Federal Rule of Civil Procedure 55, Plaintiff seeks default judgment against Defendant Scott Donaldson based upon Defendant's failure to answer the Complaint. For the reasons set forth below, it is recommended that Plaintiff's Motion be granted.

## I. Background

This case arises from an alleged breach of a guaranty agreement. (Doc. 1). Plaintiff is a national banking association with a principal place of business located at 320 S. Canal Street, Chicago, Illinois 60606. (Doc. 1, ¶ 1). Defendant is an individual residing at 3506 Bruton Road, Plant City, Florida 33565. (Doc. 1, ¶ 2; Doc. 14-1 at 34–35).

On February 23, 2026, Plaintiff filed its Complaint against Defendant seeking monetary damages for breach of a guaranty agreement. In its Complaint, Plaintiff alleges that on June 16, 2023, Plaintiff and non-party Scooter's Trucking Service, Inc. ("Borrower") entered into a Loan and Security Agreement whereby Plaintiff agreed to finance Borrower's purchase of a 2021 Peterbilt truck and a 2021 Tebco steel dump truck bed. (Doc. 1, ¶ 9; Doc.

1-1). On April 2, 2024, Plaintiff and Borrower entered into a second Loan and Security Agreement (collectively with the June 16, 2023 agreement "Loan Agreements") whereby Plaintiff agreed to finance Borrower's purchase of a 2024 Peterbilt truck and a 2023 Warren commercial truck bed. (Doc. 1, ¶ 10; Doc. 1-2). As consideration for entering into the Loan Agreements, Defendant entered into Continuing Guaranty Agreements on June 16, 2023, and April 2, 2024 (collectively the "Guaranty Agreements") whereby Defendant promised to "to pay on demand the entire Indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by [Plaintiff] by reason of [Borrower's] default or the default of any Guarantor." (Doc. 1-3 at 2–3; Doc. 1, ¶ 10)

Under the Loan Agreements, upon the occurrence of an "Event of Default," Plaintiff retained the right to "(i) declare the Loan Agreements to be in default, (ii) declare the indebtedness under the Loan Agreements to be immediately due and payable, and (iii) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code." (Doc. 1, ¶ 15; Doc. 1-1, § 5.2; Doc. 1-2, § 5.2.). An "Event of Default" is further defined with the Loan Agreements as occurring when (1) Borrower fails to pay any amount due to Plaintiff, (2) Borrower files a bankruptcy petition, or (3) Borrower or Defendant fail to pay any liabilities to Plaintiff when due. (Doc. 1, ¶¶ 16–18; Doc. 1-1, § 5.1; Doc. 1-2, § 5.1.).

On January 27, 2026, Borrower filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, Case No. 6:26-bk-00510-TPG. (Doc. 1, ¶ 6). Pursuant to the terms of the Loan Agreements, Plaintiff then declared all sums due and payable. (Doc. 1, ¶ 33). Both Borrower and Defendant have failed to make the payment due. (Doc. 1, ¶¶ 20—21). Accordingly, Plaintiff maintains that Defendant is in default under the terms of the Guarantee Agreements and liable to Plaintiff

for the sum of the outstanding loan balances, $443,755.56, plus interest, fees, and costs of recovery as of January 29, 2026. (Doc. 11, ¶¶ 25–26, 35).

As of the date of this filing, Defendant has not appeared or otherwise filed a responsive pleading. On May 11, 2026, Plaintiff filed a Motion for Clerk's Entry of Default, requesting the Clerk enter a default against Defendant due to Defendant's failure to plead or otherwise defend. (Doc. 11). On May 15, 2026, the Clerk entered default against Defendant. (Doc. 13). On June 3, 2026, Plaintiff filed a Motion for Default Judgment, requesting $463,251.52 in damages plus interest, and $2,874.50 in attorneys' fees and costs. (Doc. 14).

## II. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Once this has occurred, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). A court may enter a default judgment against a party who has failed to respond to a complaint if the complaint provides a sufficient basis for the judgment. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). "A defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact" set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation omitted). If well-pleaded, liability is established by virtue of a default. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

Damages, however, are not admitted by default. *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). "Rather, the Court determines the amount and character of damages to be awarded." *Id.* If, to enter or effectuate judgment, it is necessary to

conduct an accounting to determine damages, the court may conduct hearings or make referrals as it deems necessary. Fed. R. Civ. P. 55(b)(2). Damages may be awarded "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," if "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a hearing is unnecessary if sufficient evidence is submitted to support the request for damages).

## III. Analysis

Upon review of the filings, and for the reasons stated below, it is recommended that the judgement, including fees and costs, be entered against Defendant.

### A. Subject Matter Jurisdiction and Personal Jurisdiction

As a preliminary matter, this Court retains subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. (Doc.1, ¶¶ 1–4). This Court must also ensure it has personal jurisdiction over the defaulting defendant. *Proescher v. Sec. Collection Agency*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3432737, at *6 (M.D. Fla. June 8, 2018), *report and recommendation adopted*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3428157 (M.D. Fla. July 16, 2018). Here, personal jurisdiction exists because Defendant is domiciled in Florida. (Doc.1, ¶ 4; Doc. 1-3). *See Daimler AG v. Bauman et al.*, 571 U.S. 117, 137 (2014) ("[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (citations omitted)).

**B. Proper Service of Process**

In seeking a default judgment, Plaintiff bears the burden of establishing proper service of the Complaint. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("[Where service of process is insufficient, the court has no power to render judgment and the judgment is void."). The Federal Rules of Civil Procedure state that an individual can be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). In this case, Plaintiff (through a process server) personally served Defendant at his known residence, 3506 Bruton Road, Plant City, FL 33565 (Doc. 7). Accordingly, the Court finds that service of process was adequate.

**C. Liability & Damages**

To evaluate Plaintiffs' claim, the proper law to be applied must first be established. A federal court exercising diversity jurisdiction, such as in this matter, applies the forum state's choice-of-law rules. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Florida courts generally enforce contractual choice-of-law provisions unless the chosen forum's law contravenes strong public policy. *Kasparov v. Schnorenberg*, Case No. 3:15-cv-1093-J-32PDB, 2016 WL 8846261, at *8 (M.D. Fla. Aug. 16, 2016) (citing *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 311 (Fla. 2000)). Here, the Guaranty Agreements between the parties explicitly provide that the agreement "shall be governed by and interpreted in accordance with the laws of the state of Illinois, without regard to its conflict of laws provision." (Doc 1-3 at 2–3). Therefore, to the extent the two parties were in privity of contract as discussed below, Illinois law governs the agreement.

"Because a guaranty is a contractual obligation, a breach of guaranty claim is governed by the same principles as a breach of contract claim." *Amos Fin., LLC v. Szydlowski*, 214 N.E.3d

158, 166 (Ill. App. 1st Dist. 2022). To succeed on a claim for a breach of contract under Illinois law, Plaintiff must establish 1) the existence of a valid and enforceable contract, (2) performance by Plaintiff, (3) breach of contract by Defendant, and (4) resultant injury to Plaintiff. *Id.*

First, as to the existence of a valid and enforceable contract, Plaintiff alleges the parties entered into two separate Guaranty Agreements on June 16, 2023, and April 2, 2024, and has provided the Court verified, executed copies of same. (Doc. 1, ¶ 10; Doc. 14-1 at 34–35). Second, Defendant has properly alleged that it performed all terms and conditions under the Guaranties by advancing the funds to Borrower. (Doc. 1, ¶ 30, Doc. 14-1 at 34–35). Third, the terms of the Guaranties specifically dictate that if Borrower defaults, Defendant is liable to Plaintiff for all amounts due under the Loan Agreements. (Doc. 14-1 at 34–35). Here, Plaintiff alleges Borrower did default, and the loan balances remain outstanding. (Doc. 1, ¶ 6, 13–16, 20–21) Accordingly, Plaintiff has properly established Defendant breached the contract. Finally, injury exists as Plaintiff is short funds owed.

Under Illinois law, "damages for breach of contract are intended to place the nonbreaching party in the same position as if the contract had been performed." *Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 123 N.E.3d 1177, 1188 (Ill. App. 1st Dist. 2019). Therefore, all damages which could foreseeably result from the breach are recoverable. *Id.* Under the terms of the Guaranty Agreements, Defendant was ultimately responsible for all sums owed under the Loan Agreements. Accordingly, to place Defendant in the position it would have been had the breach not occurred, Defendant is entitled to $443,755.56, the principal unpaid balance of the loans, plus interest occurring at a rate of 18% *per annum* from January 29, 2026, through the date of entry hereof.

**D. Attorneys' Fees**[1]

Plaintiff maintains it is entitled to $2,469.50 in attorneys' fees in this action based on the following provision in Section 5.2 of the Loan Agreements: "[Borrower] shall also pay to [BMO Bank] all expenses of retaking, holding, preparing for sale, selling, and the like, including without limitation (a) the reasonable fees of any attorneys retained by [Plaintiff], and (b) all other legal expenses incurred by [Plaintiff]." However, the plain language of the provision entitles Plaintiff to attorneys' fees for legal services needed to retake and sell Borrower's collateral. As noted by Plaintiff is its Complaint, "Plaintiff is pursuing its rights and remedies against Borrower and the Collateral . . . exclusively in the Bankruptcy Case." (Doc. 1, ¶ 7) Accordingly, the Court does not find Plaintiff is entitled to attorneys' fees in this action under Section 5.2.

Curiously, Plaintiff cites to no other provision in the Loan Agreements or Guaranty Agreements entitling it to attorneys' fees in this action. However, the Guarantee Agreements themselves specifically provide that "[i]f [Borrower] fails to pay the indebtedness promptly as the same becomes due . . . each Guarantor agrees to pay on demand the entire Indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by [Plaintiff] by reason of [Borrower's] default." (Doc. 14-3 at 34–35). Accordingly, the Court finds Plaintiff is entitled to attorneys' fees.

To calculate a reasonable award of attorney's fees, courts multiply the reasonable hourly rate by the reasonable hours expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). In

[1] The Court is cognizant that Local Rule 7.01 prescribes a bifurcated procedure for the determination of costs post-judgment. However, in the interest of judicial economy, the Court will address both entitlement and amount in its Recommendation.

determining the lodestar figure, a "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The fee applicant bears the burden of establishing that the requested rates are in line with the prevailing market rates by producing direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. At a minimum, satisfactory evidence consists of more than the affidavit of the attorney performing the work; instead, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* Moreover, this Court is "an expert on the question [of reasonable hourly rates] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)

Plaintiff's counsel submitted an affidavit indicating that three Reed Smith attorneys spent a total of 6.3 hours on this matter with billable rates ranging from $305.00 per hour for staff attorney Colette Willer, $490.00 per hour for associate Maria Castro Sanchez, and $550.00 per hour for counsel Jeffrey Chadwick. (Doc. 14-2). The Court finds these rates to be reasonable. *See Regions Bank v. Chicago Title Ins. Co.*, No. 10-CV-80043, 2011 WL 13225146 (S.D. Fla. Aug. 16, 2011) (finding rates up to $550 per hour reasonable). Likewise, six-hours is a reasonable amount of time to expend on a breach of contract case where the Defendant did not appear. *See Joe Hand Promotions, Inc. v. Guevara*, No. 8:19-CV-650-T-36AAS, 2020 WL

3288029, at *5 (M.D. Fla. June 18, 2020). Accordingly, the Court recommends the request for $2,469.50 in attorneys' fees be granted.

**E. Costs**

Plaintiff also seeks $405.00 in costs comprised of the $405.00 fee for the filing of the Complaint in this action. Under Rule 54, a prevailing party is entitled to an award of costs unless the court otherwise directs. Fed. R. Civ. P. 54(d). The filing fee requested by Plaintiff in this action constitutes taxable costs pursuant to 28 U.S.C. § 1920. Therefore, the Court finds Plaintiff is entitled to $405.00 in costs.

**IV. Conclusion**

Accordingly, it is hereby

**RECOMMENDED:**

1. Plaintiffs Motion for Default Judgement (Doc. 14) against Defendant be GRANTED.
2. The Clerk be directed to enter final default judgment against Defendant in the amount of $443,755.56, plus interest occurring at a rate of 18% *per annum* from January 29, 2026, through the date of entry hereof.
3. Plaintiff be awarded attorneys' fees in the amount of $2,469.50 and costs in the amount of $405.00.

**IT IS SO REPORTED** in Tampa, Florida, on September 16, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE